IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LENNARTH T. BEARNARTH, JR.    :

  :

    v.    :    Civil Action No. DKC 09-0501

  :

MONTGOMERY COUNTY, MD, et al.    :

  :

**MEMORANDUM OPINION**

Presently pending and ready for review in this civil rights case is the motion for summary judgment submitted by Defendants Montgomery County, Maryland and William J. Peacock (ECF No. 32). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendants' motion will be granted.

## I. Background

The following facts are undisputed or set forth in the light most favorable to the Plaintiff, the non-moving party. Around noon on February 14, 2008, Plaintiff Lennarth T. Bearnarth, Jr., drove to Einstein Bros. Bagels located at 19114 Montgomery Village Avenue in Montgomery Village, Montgomery County, Maryland. (ECF No. 1 ¶ 6). While he went inside the store, Plaintiff left his black 2007 Chevrolet Suburban parked in the curb or fire lane in front of the store, facing the wrong direction, and in front of a "No Parking" sign. (ECF No. 32-3,

at 14-16).  When Plaintiff left the store he was approached by a delivery man named Douglas Beveridge who was angry that Plaintiff had parked illegally.  (ECF No. 32-5, at 9-11; ECF No. 37-3, at 34-35).  A heated verbal exchange ensued between the two individuals.  At one point, Plaintiff told Mr. Beveridge that he should be careful who he yelled at because Plaintiff could be an undercover police officer.  (ECF No. 37-3, at 46).  Mr. Beveridge testified at the criminal proceedings that Plaintiff said he could park anywhere he wanted and would not be ticketed and that Plaintiff pulled out his Honorary Special Deputy identification card issued by the Sheriff of Montgomery County as proof.  (ECF No. 32-5, at 11-13).  Mr. Beveridge describes the card as having a photograph of Mr. Bearnarth, a gold star in the background, and the word "SHERIFF" in oversized letters with bold print.  (*Id.*).  Plaintiff denies showing the card to Mr. Beveridge, but concedes that Mr. Beveridge responded "You ain't no cop."  Plaintiff also disputes Mr. Beveridge's testimony that Plaintiff implied he was driving an undercover vehicle and could have arrested Mr. Beveridge.  (ECF No. 32-5, at 14-15).

Mr. Beveridge proceeded to complete his delivery at Einstein Bros. Bagels where he learned from an employee that Plaintiff might work at Criswell Chevrolet, a nearby car dealership.  (*Id.* at 15).  Mr. Beveridge's next delivery stop

was near that car dealership, so he stopped inside to inquire about Plaintiff. (*Id.*). Coincidentally a police officer was also at the car dealership and he encouraged Mr. Beveridge to make a formal report of the incident. (*Id.*).

Mr. Beveridge called the police, and Officer Christopher Jones of the Gaithersburg Police Department was assigned to take the complaint. (ECF No. 32-4, at 13). Officer Jones interviewed Mr. Beveridge and spoke with staff at the car dealership. Based on his conversation, Officer Jones prepared an Incident-Offense report. The report includes Mr. Beveridge's account of his altercation with Plaintiff and the conclusion from the staff at the car dealership, based on the description of the individual and his vehicle, that the suspect was probably Lennarth Bearnarth, Jr. of 22554 Sweetleaf Lane, Laytonsville, Maryland.[1] (ECF No. 32-7).

After Officer Jones' initial report, the case was transferred to Detective William J. Peacock of the Fifth District Station of the Montgomery Police Department for jurisdictional reasons. (ECF No. 32-4, at 30). Detective Peacock spoke with Officer Jones, interviewed Mr. Beveridge, ran a criminal history and driver's license check on Mr. Bearnarth,

---

[1] Mr. Bearnarth had previously been the general manager of the car dealership. (ECF No. 32-3, at 212).

and spoke with his colleagues in the Special Investigations Division and Firearms Unit to see if they had any information about Mr. Bearnarth. (ECF No. 32-6, at 59-60, 64-66, 100). During the course of his investigation, Detective Peacock confirmed that Mr. Bearnarth had been issued an Honorary Special Deputy Sheriff identification card and received information from a confidential source that Mr. Bearnarth had displayed this identification on other occasions and claimed to be a police officer. (*Id.* at 83-84, 101). The same confidential source also reported that Mr. Bearnarth was a drug user and carried weapons. (*Id.* at 78-80, 83-85). The results of Detective Peacock's investigation were compiled in a supplemental report. (ECF No. 32-9).

On February 28, 2008, Detective Peacock submitted applications for search and seizure warrants for Plaintiff's vehicle, home, and office. (ECF Nos. 32-10, 32-11, and 32-12). The applications stated that he was applying to search for evidence of "the crime of Impersonating Police Officer, the evidence being: A Honorary Montgomery County Sheriffs Identification." (*Id.*) The applications also stated specific details about the vehicle to be searched, Plaintiff's residence,

and Plaintiff's office. (*Id.*).[2] The applications were reviewed

that day by Judge Eric M. Johnson of the Circuit Court for

---

[2] With respect to Plaintiff's vehicle the warrant
application provided the following detail:

> 2007 Chevrolet Suburban, black in color,
> Vehicle Identification Number
> 3GNFK16Y67G223096, displaying Maryland
> license plated 077M640 and a Harley Davidson
> Sticker on the rear window.

(ECF No. 32-10). With respect to Plaintiff's residence, the
warrant application provided the following detail:

> 22554 Sweatleaf Lane in Laytonsville,
> Montgomery County, Maryland is described as
> a two story above ground single family house
> with the numerals 22554 set on a mailbox
> which is to the right side of he [sic]
> driveway. The driveway leads from the road
> to the left side of the house where there is
> a single car garage door and a double car
> garage door. The house has a brick front
> exterior and beige siding. There is a glass
> enclosed room on the other end of the house.
> The back yard is enclosed by a wooden fence.
> A small roof over the front door is
> supported by two white pillars, the front
> door appears to be wood.

(ECF No. 32-11). With respect to the Plaintiff's office, the
warrant application provided the following detail:

> 19634 Club House Road, Suite 310, a two
> story brick office building with the
> numerals 19634 mounted on the outside front
> of the building. There is a sign board in
> front of the office listing First Guardian
> Mortgage Corp as suite 310. The first door
> on the left side of the common hallway has a
> sign board to the left of the door with the
> numerals (black) 310 set on a white

Montgomery County, and Judge Johnson issued warrants for the three locations. (ECF Nos. 32-13, 32-14, 23-15).

On February 29, 2008, Montgomery County police officers executed the search warrants. Plaintiff's vehicle was the first place they searched. The initial stop was made by Officer Beau Curry, a K-9 officer who had his dog with him. (ECF No. 32-8, at 121-22). Detective Peacock was not present initially but arrived on the scene a few minutes after Plaintiff had been pulled over. (*Id.* at 122). Plaintiff maintains that he told the officers that he was not driving the vehicle listed in the warrant because just the night before he had purchased a new black 2008 Chevrolet Suburban. (*Id.* at 131-34). The new vehicle was the same make, color, and model as Plaintiff's old car listed in the warrant and had the same license plate. (*Id.*). Detective Peacock does not recall Plaintiff telling him that it was a different vehicle. (*Id.* at 131). The officers proceeded with the search of Plaintiff's new vehicle and according to Plaintiff and Detective Peacock, Officer Curry's

---

background and the wording First Guardian
Mortgage Corp on the sign. The door is
wooden with a door knob and a deadbolt set
on the right.

(ECF No. 32-12).

dog was used to search the vehicle at some point; Officer Curry does not recall his dog entering the vehicle, however. (*Id.* at 125). During the search Officer Peacock seized from Plaintiff's wallet an Honorary Special Deputy Sheriff identification card. Plaintiff explained, however, that this was not his current card because it had his name misspelled. Plaintiff also gave a recorded statement. (ECF Nos. 32-8, at 122-25; 32-5).

After the search of Plaintiff's vehicle, a group of officers including Detective Peacock went to search Plaintiff's office, while a separate group conducted a search of Plaintiff's home. (ECF No. 32-8, at 139-40). The officers at Plaintiff's office conducted a thorough search lasting fifteen to thirty minutes, including using a device to look above the ceiling tiles, but they did not find the identification card. The officers did find and seized three pieces of drug paraphernalia. (*Id.* at 145-148). The officers at Plaintiff's house were also unable to locate the card. At one point, Plaintiff called his wife from his office to tell her to look for the card in the pocket of a specific pair of pants, but she was unable to find it there. (*Id.* at 136-39; ECF No. 32-20, at 37). Plaintiff has testified that he found the card in his pants later that evening and on March 3, 2008, Plaintiff turned the card in to Sheriff Raymond Knight. (ECF No. 32-3, at 130-32, 162-63).

On March 4, 2008, Officer Peacock filed an application for an arrest warrant charging Plaintiff with impersonating a police officer. (ECF No. 32-21). Commissioner Toby Miles reviewed the application, determined that there was probable cause to issue a warrant and issued a statement of charges against Plaintiff containing two charges––one under Public Safety Article § 3-502(b) of the Maryland Code for "personate police officer" and another under Public Safety Article § 3-502(c) for "personation: uu/uniform" (*Id.*). Commissioner Miles also issued an arrest warrant authorizing the arrest of Plaintiff for the charges. Plaintiff was arrested on March 6, 2008, by Montgomery County police officers. Detective Peacock was not present.

Plaintiff was prosecuted by the Montgomery County State's Attorney. A trial was held on April 28, 2008, and at the conclusion Plaintiff was acquitted on both counts. (ECF No. 32-4). Judge Brian Kim of the District Court of Maryland for Montgomery County presided and concluded that the proof of the element of fraudulent design had not been met by the prosecution because Mr. Beveridge had testified that he did not believe that Plaintiff was a police officer. (*Id.* at 113-14).

On February 27, 2009, Plaintiff filed a complaint against Montgomery County, Maryland and Detective Peacock. (ECF No. 1). The complaint alleged violations of Plaintiff's civil rights under the Fourth and Fourteenth Amendments, violations of

Articles 24 and 26 of the Maryland Declaration of Rights, and state law tort claims for false arrest, false imprisonment, and malicious prosecution. (*Id.*). Defendants filed a motion for partial dismissal that was granted in part on June 18, 2009. The order dismissed Plaintiff's allegations of Montgomery County's *respondeat superior* liability under 42 U.S.C. § 1983 in Count I, Plaintiff's allegations under Article 24 of the Maryland Declaration of Rights in count II, and Plaintiff's state law tort claims against Montgomery County in counts III, IV, and V. (ECF Nos. 5, 8, and 9). Plaintiff subsequently filed a motion for leave to amend his complaint that was denied. (ECF Nos. 24, 38, 39). The claims remaining in the case are the following: (1) Plaintiff's § 1983 claim that Detective Peacock violated Plaintiff's Fourth Amendment rights, incorporated by the Fourteenth Amendment to apply to states and state actors, because Plaintiff's arrest and the searches of his vehicle, office, and house were conducted without probable cause and were unreasonable (count I); (2) Plaintiff's claim under Article 26 of the Maryland Declaration of Rights that Montgomery County and Detective Peacock violated his right to be free from unreasonable searches and seizures (count II); (3) Plaintiff's state law tort claims against Detective Peacock for false arrest (count III), false imprisonment (count IV), and malicious

prosecution (count V).  On July 1, 2010 Defendants filed the present motion for summary judgment.

## II.  Standard of Review

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  In other words, if there clearly exists factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate.  *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co., LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See Scott v. Harris*, 127 S.Ct. 1769, 1774 (2007); *Emmett,* 532 F.3d at 297.  A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.  *Celotex Corp.*, 477 U.S. at 323.  "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Id*.  Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to

confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 254; *Celotex Corp.*, 477 U.S. at 324. "A mere scintilla of proof, however, will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson*, 477 U.S. at 249. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. at 249-50(citations omitted).

## III. Analysis

Defendants argue that summary judgment is appropriate for all of Plaintiff's claims. Specifically Detective Peacock contends that he is not liable for violations of Plaintiff's Fourth Amendment rights because there was probable cause for both the search and arrest warrants and because he is entitled to qualified immunity. Both Defendants also argue that the presence of probable cause precludes a finding of liability for violations of Plaintiff's state constitutional rights. Finally Detective Peacock argues that summary judgment should be awarded on Plaintiff's state law tort claims because there was legal justification and probable cause for Plaintiff's arrest and

Plaintiff has failed to demonstrate that Defendant acted with actual malice.

### A.    Alleged Fourth Amendment Violations

Detective Peacock argues that the undisputed facts are more than adequate to establish that the arrest warrant and search warrants were supported by probable cause and that their execution did not violate Plaintiff's Fourth Amendment rights. Plaintiff argues in response that there was no probable cause because the affidavits accompanying the warrant application and prepared by Detective Peacock were deficient and dishonest in that they contained statements that Detective Peacock knew to be inaccurate and omitted crucial facts. Plaintiff also argues that the search warrants were not sufficiently particularized. In addition, Plaintiff argues that Detective Peacock is not entitled to qualified immunity because there was no probable cause for the arrest and searches and Defendant knew that proceeding without probable cause was a violation of Plaintiff's Fourth Amendment rights.

The Fourth Amendment to the United States Constitution dictates that:

> The right of the people to be secure in
> their persons, houses, papers, and effects,
> against unreasonable searches and seizures,
> shall not be violated, and no warrants shall
> issue, but upon probable cause, supported by
> oath or affirmation, and particularly

> describing the place to be searched, and the
> persons or things to be seized.

U.S. Const. amend IV. Probable cause requires enough evidence "to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949)(quoting *Carroll v. United States*, 267 U.S. 132, 162(1925); *see also United States v. Johnson*, 599 F.3d 339, 346 (4th Cir.)("the standard for whether probable cause exists is an objective one; it exists when, 'at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense.'")(quoting *United States v. Manbeck*, 744 F.2d 360, 376 (4th Cir. 1984), *cert. denied*, 131 S.Ct. 358 (2010)). "[P]robable cause is a fluid concept-turning on the assessment of probabilities in particular factual contexts-not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983)(quoted in *Maryland v. Pringle*, 540 U.S. 366, 370 (2003)).

Plaintiff maintains that the warrants were defective and not supported by probable cause due to Detective Peacock's false statements and omissions. To prove that his conduct was a violation of the Fourth Amendment, Plaintiff must prove that Detective Peacock "deliberately or with a reckless disregard for

the truth made material false statements in his affidavit . . . or omitted from that affidavit material facts with the intent to make, or with reckless disregard of whether they thereby made, the affidavit misleading." *Miller v. Prince George's County, Maryland*, 475 F.3d 621, 627 (4th Cir.)(internal quotations and citations omitted), *cert. denied*, 552 U.S. 818 (2007). And Plaintiff must prove that the misstatements or omissions were material to the judicial officer's finding of probable cause to arrest. *Id.; see also Franks v. Delaware*, 438 U.S. 154, 171-72 (1978). "Reckless disregard" can be established through evidence that the officer acted "with a high degree of awareness of [a statement's] probable falsity," that is, "when viewing all the evidence, the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported." *Miller*, 475 F.3d at 627 (internal quotations and citations omitted). With respect to omissions, "reckless disregard" can be established by evidence that a police officer "failed to inform the judicial officer of facts [he] knew would negate probable cause." *Id.*(internal quotations and citations omitted). Allegations of negligence or innocent mistake by a police officer will not provide a basis for a constitutional violation. *Id.* at 627-28.

Defendant identifies the following facts that were incorporated into Detective Peacock's warrant applications and

that he argues are indicative of a suspect attempting to impersonate a police officer: (1) that Mr. Beveridge complained that Plaintiff had flashed his law enforcement credential, purported to be a police officer, and told Mr. Beveridge that he had better watch out or charges could be proffered against him; (2) that Plaintiff said to Mr. Beveridge "I'm a police officer and I'll park where I want to" and "I'm an undercover police officer and that's an undercover car"; (3) that Plaintiff had a Honorary Special Deputy Card with a gold star in the background that could pass for a law enforcement credential if presented quickly to an undiscerning eye; and (4) that a confidential source provided information that Plaintiff had displayed the card to people on other occasions claiming to be a police officer. (ECF No. 32-2, at 12). Plaintiff contends that Mr. Beveridge did not testify that Plaintiff told him he'd better watch out or he'd get charges until trial and there is no evidence that Detective Peacock knew of this statement when he applied for the warrants, but does not otherwise challenge these facts. (ECF No. 37, at n. 1).

Plaintiff instead identifies a number of other omissions or misstatements in the application. Specifically Plaintiff notes that the application for the warrants states that during his investigation Detective Peacock "determined Lennarth Bearnarth was given an Honorary Montgomery County Sheriffs [sic]

identification and badge, but does not have any police powers or law enforcement authority" (ECF No. 32-21, at 3), but Defendants admit that they are not claiming that Plaintiff had a badge, only that he had an identification card. (ECF No. 32-2, at 16).[3]

Plaintiff also contends that Detective Peacock's sworn statement in his affidavit that "information received by the police from reliable confidential source(s) states that Bearnarth has displayed his identification to people on other occasions claiming that he is a police officer" (ECF No. 32-21, at 3) is materially false because Detective Peacock was only aware of one alleged confidential source at the time and because Detective Peacock never verified the reliability of the informant. (ECF No. 37, at 12-14). Plaintiff further identifies two material omissions in the affidavit; namely that Detective Peacock did not specifically state that the Honorary Special Deputy Card was properly issued to Mr. Bearnarth and that the application omitted any facts to show that Mr. Bearnarth's

---

[3] The word badge appears in the applications for search and seizure warrants for Plaintiff's home and office and the application for Statement of Charges. (ECF Nos. 32-11, 32-12, and 32-21). It does not appear in the application to search Plaintiff's vehicle. Defendant maintains the omission from the vehicle search application was a word processing error. (ECF No. 32-8, at 119-20).

alleged display of the identification was with fraudulent design on person or property. (*Id.* at 14-16).

Beginning with the alleged misstatement regarding the badge, Defendant concedes that the statement was factually inaccurate but argues that it was unintentional and immaterial. (ECF No. 32-2, at 16). Defendant points out that Plaintiff himself used the word "badge" interchangeably with "identification card" in his recorded statement and at trial. (ECF No. 32-18, at 9-10; ECF No. 32-4, at 88). Defendant also references the deposition testimony of Commissioner Miles, who issued the arrest warrant, to support his position that the use of the word badge did not affect his decision finding probable cause. (*Id.*). Commissioner Miles testified regarding the application for statement of charges that with the knowledge that Plaintiff had not used a badge he still thought the charges were appropriate based on the rest of the application. (ECF No.32-22, at 79).

As Plaintiff correctly notes, the court cannot rely on the testimony of the judicial officer who issued a warrant as proof of probable cause. The court must make its own determination, by "excis[ing] the offending inaccuracies and insert[ing] the facts recklessly omitted, and then determin[ing] whether or not the corrected warrant affidavit would establish probable cause." *Miller*, 475 F.3d at 628 (internal quotations omitted). In this

instance, the inaccurate reference to a badge was not material. The important fact is the allegation that Plaintiff displayed some form of police or sheriff credential; whether it was an identification card or badge is not of significance. Moreover, there is no evidence that Detective Peacock acted with deliberateness or with a reckless disregard for the truth. At most he was negligent or careless in preparing and editing his applications to make sure that they were consistent.

Moving next to the statement regarding "confidential source(s)," Plaintiff argues that there is no evidence that Detective Peacock spoke with more than one confidential informant and the warrant applications' implication that there were multiple sources is materially misleading. (ECF No. 37, at 12). Plaintiff also argues that Detective Peacock failed to cite the basis for the informant's alleged reliability. (ECF No. 37, at 14). Defendant counters that the use of the parentheses around the "s" was intended to convey his lack of certainty regarding the number of sources, and that he was uncertain whether the Special Investigations Division had independently spoken with one or more informants that were different from his own. (ECF No. 39, at 7)(citing ECF No. 37-5, at 76-79, 83-85). Defendant also argues that this discrepancy is irrelevant because nothing more than the testimony of Mr.

Beveridge was needed to establish probable cause. (ECF No. 39, at 7).

To characterize Detective Peacock's use of the term "source(s)" in the application as a false statement is a stretch; to characterize it as a material misstatement is a definite overreach. Detective Peacock's explanation for the use of the "s" in parentheses to reflect his lack of certainty regarding the number of sources is cogent and reasonable. Moreover, the applications would have been sufficient to establish probable cause for the searches and arrest on the basis of Mr. Beveridge's testimony and the evidence that Plaintiff had been issued an honorary credential of some sort. The statements of one or more confidential sources in corroboration were ultimately just additional support making the issuance of the warrants even less controversial. Plaintiff's argument regarding the affidavit's failure to recite the basis for the informant's alleged reliability is also inadequate to render the warrants unsupported by probable cause. While Plaintiff is correct that when informant tips are the basis for seeking a warrant the informant's reliability and truthfulness are relevant factors to consider in assessing probable cause, *see Gates*, 462 U.S. at 234, ultimately the court must rely on a totality of circumstances test. *Id.* Sufficient corroboration through police investigation can establish probable cause when

there is nothing to establish independently that the informant is reliable. *Id; see also United States v. Miller,* 925 F.2d 695, 697 (4th Cir.)(finding probable cause where police sufficiently corroborated a tip from an unknown informant), *cert. denied*, 502 U.S. 833 (1991). Here the totality of circumstances supports a finding of probable cause. The confidential source or sources' tip that Plaintiff was telling individuals that he was a police officer is far from the sole basis upon which Detective Peacock sought his warrants.

Turning to the first alleged material omission, Plaintiff argues that if the application had stated that the Honorary Deputy Sheriff card was properly issued by the Sheriff, instead of using the word given, the Commissioner would not have had any basis to charge Plaintiff with a violation of Maryland Public Safety Code Section 3-502 for using a police article without appropriate authority. (ECF No. 37, at 15). Detective Peacock appears to concede that this word choice may have affected the Commissioner's decision to charge Plaintiff under § 3-502(c) for wearing police articles without authorization, but notes that the manner in which Plaintiff acquired the identification card is irrelevant to the count of impersonating a police officer under § 3-502(b). (ECF No. 39, at 7 and n.5). Detective Peacock also points out that the charge under § 3-502(b) was the only one he requested in the application; Commissioner Miles

added the other count in the charging statement without a request to do so. (*Id.*).

Detective Peacock's use of the word "given" does not lead inexorably to the conclusion that Plaintiff obtained the identification without authorization. Moreover, even if Detective Peacock had stated in his application that the identification was properly issued to Plaintiff, the application would still have supported a finding of probable cause that Plaintiff was in violation of § 3-502(b). Overall this omission was immaterial and does not affect the probable cause determination.

Finally, Plaintiff argues that Defendant failed to include facts supporting the fraudulent design requirement of the charge under § 3-502(b). (ECF No. 37, at 16). Defendant argues in response that a police officer investigating a crime is not required to sort out and resolve every legal issue that may come up at trial and cites an unpublished opinion from Judge Bennett stating that "an affiant is not required to explicitly identify each of the elements of an offense; certain elements, such as intent, may be inferred from the facts stated in the affidavit." *Payne v. City of Laurel, Maryland*, No. RDB-07-583, 2009 WL 1871258 at *22 (D.Md. June 29, 2009).

Plaintiff characterizes this last alleged flaw with the warrant application as an omission, but it is not an omission in

the typical sense in which that term is used in this context. Generally problematic omissions from warrant applications are facts which if included would negate a finding of probable cause; the notion being that the affiant purposely chose not to include the information in order to mislead the party responsible for issuing a warrant. Here, the inclusion of additional facts specifically related to the fraudulent deception element of the alleged crime would only have augmented the basis for finding probable cause. Without these specific facts, there was adequate justification in the application for Commissioner Miles to conclude that Plaintiff was claiming to be a police officer with the intent of deceiving Mr. Beveridge (and possibly others) into believing that Plaintiff possessed authority which he did not. The fact that Judge Kim ultimately concluded that the State had insufficient evidence to prove beyond a reasonable doubt that Plaintiff acted with fraudulent design does not mean that it was impossible or unreasonable for a police officer or commissioner to have concluded that there was probable cause that the crime of impersonating a police officer was committed.

In addition to his probable cause arguments, Plaintiff argues that the execution of the arrest warrant failed to comport with the Fourth Amendment's reasonableness standard. Plaintiff contends the arrest warrant failed to comply with Md.

Rule 4-212(d) in that there was no legal justification for the request and issuance of the arrest warrant. Md. Rule 4-212(d) provides as follows:

> (d) Warrant – Issuance; Inspection. (1) In the District Court.- A judicial officer may, and upon request of the State's Attorney shall, issue a warrant for the arrest of the defendant, other than a corporation, upon a finding that there is probable cause to believe that the defendant committed the offense and that (A) the person had previously failed to respond to a summons that had been personally served or a citation, (B) there was a substantial likelihood that the person would not respond to a summons, (C) the person's whereabouts were unknown and the issuance of a warrant is necessary to subject him to the court's jurisdiction, (D) the person was in custody for another offense, or (E) there was probable cause to believe that the person posed a danger to another person or to the community.

Plaintiff contends that Detective Peacock's warrant affidavit contained no facts upon which the commissioner could determine that there was probable cause that any of the bases for seeking an arrest warrant under Rule 4-212(d) applied. He further argues that as a result it was misleading and inaccurate for Detective Peacock to assert "your affiant believes that probable cause does exist and prays that an arrest warrant be issued." (ECF No. 37, at 20)(citing ECF No. 32-23). Plaintiff contends that implicit in Detective Peacock's sworn statement was the assurance that Plaintiff (a) had previously failed to respond to

a summons that had been personally served or a citation, (b) was substantially likely not to respond to a summons, (c) was in an unknown location, (d) was in custody for another offense, (e) or posed a danger to another person or to the community. (ECF No. 37, at 21). Plaintiff argues that Detective Peacock knew that none of these options was true because he had previously cooperated fully with the Investigation and had even delivered to the police the honorary identification card that they were unable to locate during their searches.

Defendant responds that Plaintiff's argument is based on a misapplication of Md. Rule 4-212(d) and that the Rule applies only to judicial officers and imposes no requirements on police officers applying for warrants. Additionally Defendant maintains that the Maryland Rule does not confer any rights under the United States Constitution and accordingly there is no constitutional requirement that an officer must seek a summons, rather than a warrant, in certain situations. (ECF No. 32-2, at 17-18).

Plaintiff's argument, although creative, is ultimately unpersuasive. Commissioner Miles' issuance of an arrest warrant in lieu of a summons did not violate Plaintiff's constitutional rights. If there is "probable cause to believe that an individual has committed even a very minor criminal offense" that individual may be arrested without violating the Fourth

Amendment. *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); *see also Davis v. DiPino*, 99 Md.App. 282, 294 (Md.App. 1994)("The issuance of a summons rather than a warrant is not required by the United States Constitution or by the Constitution of Maryland."), *rev'd on other grounds*, 337 Md. 642 (1995). The probable cause requirement applies only to the belief that the individual committed the offense, there is no constitutional requirement that an officer must have probable cause to believe he has satisfied a state rule governing when that state's judicial officers may issue an arrest warrant.

Plaintiff also contends that the search warrants violated the Fourth Amendment because Detective Peacock did not have probable cause to conduct simultaneous searches of multiple locations. (ECF No. 37, at 24). Plaintiff argues that Detective Peacock had no reason to believe that the identification card would be anywhere other than on Plaintiff's person and that it was impossible for the card to be in three locations at once. (ECF No. 37, at 25). Defendant, however, maintains that there was probable cause to believe the identification card was in any of the three places searched.

The key question is whether there was probable cause to believe Plaintiff's identification card could be found in his vehicle, home, or office. In the Fourth Circuit, as well as the Fifth, Sixth, Eighth, and Ninth Circuits, "the nexus between the

place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988), *cert.* denied, 488 U.S. 1031 (1989). Applying this standard, the Fourth Circuit has upheld searches where no specific facts established a link between the item and the location searched, but it was reasonable to believe the item might be in that location. *Id.; United States v. Richardson*, 607 F.3d 357, 371 (4th Cir.)(upholding search of an alleged child pornographer's home without specific allegations in the affidavit that the individual was keeping evidence of his crimes at his new apartment), *cert. denied*, 131 S.Ct. 427 (2010). Although there is no Fourth Circuit precedent specifically allowing for the issuance of multiple search warrants where there is probable cause to believe the sought item or items may be found in more than one location, other circuits and a district court within the Fourth Circuit have so held. *See United States v. Burkhart*, 602 F.3d 1202, 1208 (10th Cir. 2010)("[i]f one warrant can authorize a search for multiple locations, . . . surely law enforcement may obtain multiple warrants for multiple locations, so long as they demonstrate probable cause as to each location); *United States v. Hillyard*, 677 F.2d 1336, 1339 (9th Cir. 1982)("[w]hen property to be seized is being moved from place to

26

place, it may be reasonable to issue warrants directed to multiple locations, and officers need not confine themselves to chance by choosing only one location for a search."); *United States v. Queen*, 732 F.Supp. 1342, 1349 (W.D.N.C. 1990)(citing *Hillyard*). The Court of Appeals of Maryland has held similarly in *State v. Ward*, 350 Md. 372, 386 (1998):

> The same probable cause that supported issuance of the search warrant for 1634 Darley Avenue supported a search warrant for Ward's nine-year-old Oldsmobile. The handgun and the ammunition for which the police were searching were highly portable and could be under the defendant's control either at his home or concealed in his automobile. LaFave states: "It is permissible to have a single warrant authorize search of a described place and a described person or of a described place and a described automobile, without regard to whether the person or vehicle is to be found at the place described." W.R. LaFave, Search & Seizure § 4.5(c), at 535 (3d ed.1996).

Plaintiff argues that the applications contained no factual averments that would suggest that the identification card was being moved from place to place. That level of specificity in the application was unnecessary, however, because it is inherent in the nature of an identification card that it could travel from place to place with its owner, or be left at one's home or one's office if it was not needed or intended to be used on a particular day. Moreover there was no danger that the warrants could lead to general searches because each one specifically

described the one item that was being searched for, Plaintiff's honorary sheriff's deputy identification card. Overall the search warrants were sufficiently particularized and supported by probable cause.

Plaintiff also argues that the search of his vehicle was unreasonable because the police officers did not search the vehicle that was identified in the warrant. Plaintiff also contests the use of a drug sniffing dog because the warrant did not authorize a search for drugs or drug paraphernalia. (ECF No. 37, at 30-31). Defendant argues that the officers' search of the wrong vehicle was an honest mistake and notes that the vehicle searched was the same color, model, and make as the one listed in the warrant and bore the same license plates. Detective Peacock also argues that he did not order the dog to search the car and he is not a K-9 officer or dog expert and is not familiar with the capabilities of dogs. Detective Peacock testified that he thought that a dog might have been able to locate the identification card based on human scent, and he was not shocked when the dog was used to search Plaintiff's car. (ECF No. 32-2, at 23-24)(citing ECF No. 32-8, at 126-28). Plaintiff argues that he told the officers it was not the same car, and, thus, it was not an honest mistake but a deliberate decision to proceed with the search absent authorization. (ECF No. 37, at 31).

Searches of the wrong vehicle, place, or person are not unreasonable when they are the result of the honest mistake of the officers conducting the search. *Maryland v. Garrison*, 480 U.S. 79, 86-88 (1987)(finding no violation of Fourth Amendment for search of the wrong person what was result of reasonable misidentification); *Mazuz v. Maryland*, 442 F.3d 217, 226-28 (4th Cir. 2006)(holding that the search of wrong dorm room was not unreasonable search in violation of Fourth Amendment where it was result of honest mistake). Detective Peacock has testified that he does not have any recollection of Plaintiff telling him that it was a different vehicle than the one listed on the warrant and that he arrived after the search had begun. Plaintiff does not contest these facts. Thus, even if some of Detective Peacock's colleagues heard Plaintiff say they had the wrong car, there is no reason to believe that Defendant himself had this knowledge nor any basis to believe he was not operating under the belief that they were executing a valid warrant. Defendant's Peacock's search was not unreasonable. Moreover, a warrant is not necessary to search a car, if there is probable cause. *United States v. Kelly*, 592 F.3d 586, 589 (4th Cir.)(citing *Carroll v. United States*, 267 U.S. 132, 153 (1925), *cert. denied*, 130 S.Ct. 3374 (2010)).

Overall, Plaintiff's search and arrest warrants were supported by probable cause and carried out in a reasonable

manner.  Plaintiff's Fourth Amendment rights were not violated and summary judgment in favor of Detective Peacock is appropriate on the Section 1983 count.

## B.    Maryland Declaration of Rights Claim

Both Defendants seek summary judgment on Plaintiff's claim that they violated Article 26 of the Maryland Declaration of Rights.  Article 26 provides:

> all warrants, without oath or affirmation, to search suspected places, or to seize any person or property, are grievous and oppressive; and all general warrants to search suspected places, or to apprehend suspected person, without naming or describing the place, or the person in special, are illegal, and ought not to be granted.

Md. Const., Declaration of Rights, Art. 26.  Article 26 is considered to be *in pari materia* or equated with the Fourth and Fourteenth Amendments to the United States Constitution. *Widgeon v. E. Shore Hosp. Ctr.*, 300 Md. 520, 536 (1984); *Gadson v. State*, 341 Md. 1, n.3 (1995), *cert. denied*, 517 U.S. 1203 (1996).  Because Plaintiff has not established any violations of the Fourth Amendment, he cannot recover under the Maryland Declaration of Rights either.

## C.    Maryland Tort Claims

Beginning with the counts for false arrest and false imprisonment, Defendant argues that Plaintiff's claims must fail because he did not personally arrest Plaintiff and there was

legal justification for the arrest. In contrast, Plaintiff maintains that Detective Peacock unlawfully detained him while executing a search warrant that was not supported by probable cause. (ECF No. 37, at 35).

The elements of the torts of false arrest and false imprisonment under Maryland law are identical. The elements are: (1) the deprivation of the liberty of another, (2) without consent, and (3) without legal justification. *Heron v. Strader*, 361 Md. 258, 264 (2000). False arrest or false imprisonment claims cannot succeed "where the sole basis for the tort action is an arrest made by a police officer pursuant to a warrant which appears on its face to be valid." *Montgomery Ward v. Wilson*, 339 Md. 701, 721 (1995). Nor does a claim of false arrest lie against the instigator where the plaintiff is not detained by the instigator and is arrested by a police officer pursuant to a facially valid warrant. *Id.* at 723. The proper tort to assert against the instigator in such situations is malicious prosecution. *Id.* This principle was reiterated by the court in *Davis* where the court granted summary judgment in favor of a police officer on a claim of false arrest where the defendant had been the one to apply for the statement of charges but had not been the one who actually apprehended the plaintiff. *Davis*, 121 Md.App. at 82. The *Davis* court explained "the common law tort of false arrest contemplates that the defendant,

through threats or actions, must create a 'present restraint of liberty'" thus the tort did not apply to the officer who set in motion the acts the led to the arrest but was not the arresting party. *Id.* (citing W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 11, at 51 (5th ed. 1984)).

In this case there is no dispute that Detective Peacock was not the arresting officer, accordingly he cannot be held liable for false arrest or false imprisonment related to Plaintiff's arrest. Detective Peacock was present when Plaintiff was stopped to execute the search warrant, but the search warrant was supported by probable cause and thus the temporary detention of Plaintiff was done with legal justification. There is no evidence from which to conclude that Plaintiff was falsely arrested or imprisoned by Detective Peacock.

Turning next to the malicious prosecution claim, the elements of malicious prosecution in Maryland are: "(1) a prosecution initiated against the plaintiff without probable cause, (2) with malice, or with a motive other than to bring the offender to justice; and (3) termination of the prosecution in favor of the plaintiff." *Davis*, 121 Md.App. at 82-83; *see also Montgomery Ward*, 339 Md. at 714; *Brewer v. Mele*, 267 Md. 437, 440 (1972). "Malice in this context means that the party was actuated by an improper motive, and proof of malice does not require evidence of spite, hatred, personal enmity or a desire

for revenge." *Keys v. Chrysler Credit Corp.*, 303 Md. 397, 408
n. 7 (1985); *see also, e.g., Exxon Corp. v. Kelly*, 281 Md. 689,
701 (1987)("a purpose other than that of bringing an offender to
justice"); *Krashes v. White*, 275 Md. 549, 554 (1975)("a primary
purpose in instituting the proceeding other than that of
bringing an offender to justice"). The disputed issues in this
case are whether Detective Peacock initiated the prosecution
without probable cause and whether he acted with malice or
another improper motive.

There was probable cause for Detective Peacock to seek a
statement of charges against Plaintiff and prosecution for the
offense of impersonating a police officer. The bulk of
Plaintiff's arguments relate to the charge for violating § 3-
502(c) of the Maryland Public Safety code for wearing a police
article and the lack of probable cause to prosecute for this
crime.[4] (ECF No. 37, at 36). But Detective Peacock did not
request that Plaintiff be charged with this crime; Commissioner
Miles added it to the charging statement of his own volition.
Accordingly, to the extent probable cause was lacking for the

---

[4] Md. Code Ann. Pub. Safety § 3-502(c) provides: except as
provided in subsection (e) of this section, a person may not
have, use, wear, or display a uniform, shield, button, ornament,
badge, identification, or shoulder patch adopted by the
Department of State Police to be worn by its members, insignia,
or emblem of office, as is worn by a police officer, sheriff,
deputy sheriff, or constable.

charge under § 3-502(c), Detective Peacock is not responsible. For the charge under § 3-502(b), impersonating a police officer, there was probable cause. Specifically Detective Peacock had interviewed Mr. Beveridge and learned that Plaintiff had shown law enforcement identification to Mr. Beveridge during their altercation and represented that he was an undercover police officer. In addition, Detective Peacock had learned directly from Plaintiff that he had an honorary sheriff's deputy identification card and had in fact recovered the card from Plaintiff. These facts and circumstances were sufficient to establish probable cause that Plaintiff was guilty of impersonating a police officer.

Moreover, there is no evidence that Detective Peacock acted with malice or improper motives. Plaintiff argues that this element is established because initiating criminal proceedings without probable cause is evidence of malice and because there is evidence that Detective Peacock pursued him in the hope that it would lead to an arrest on drug charges. (ECF No. 37, at 38). Plaintiff's first argument fails because there was probable cause for the criminal proceedings. Plaintiff's second argument fails because it is based purely on speculation and unsupported by the facts. The only fact in the record relating to drugs is that officers discovered drug paraphernalia during the search of Plaintiff's office. No charges were pursued in

connection with these items, providing no support for Plaintiff's theory, but instead refuting it. With no evidence to support two of the elements of a claim of malicious prosecution, summary judgment in favor of Defendant is appropriate on the state law tort claims as well.

**IV.  Conclusion**

For the foregoing reasons, Defendants' motion will be granted.  A separate Order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
